525 S.E.2d 310

**In re Petition of Dennis H. BURKS for Judicial Review of Administrative Decision Made by Joe E. Miller, Commissioner, Department of Transportation, Division of Motor Vehicles, Suspending the License of Dennis H. Burks to Operate a Motor Vehicle.**

**No. 25897.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 19, 1999.

Decided Dec. 3, 1999.

Darrell V. McGraw, Jr., Esq., Attorney General, Jacquelyn I. Custer, Esq., Senior Assistant Attorney General, Charleston, West Virginia, Attorneys for Joe E. Miller, Commissioner.

Randy D. Hoover, Esq., Stanley I. Selden, Beckley, West Virginia, Attorney for Petitioner.

STARCHER, Chief Justice:

## I.

### Facts & Background

On December 26, 1997, the appellee, Dennis H. Burks ("Burks"), was arrested in Beckley for driving under the influence of alcohol ("DUI") by Deputy L.D. Lilly of the Raleigh County Sheriff's Department. After failing field sobriety tests administered by Deputy Lilly, Burks was taken to a police station and given a chemical breath test, which registered an alcoholic concentration in the appellee's blood of 14 hundredths of one percent (.14), by weight. The legal limit is 10 hundredths (.10). From the police station, Burks called his attorney. Following that conversation, Burks requested a blood test. He was taken to Raleigh General Hospital where a blood test was performed.

Pursuant to *W.Va.Code*, 17C–5A–1(b) [1994], a law enforcement officer arresting an individual for DUI

... shall report to the commissioner of the division of motor vehicles by written statement within forty-eight hours the name and address of the person so arrested. The report shall include the specific offense with which the person is charged, and, if applicable, a copy of the results of any secondary tests of blood, breath or urine.

The "Statement of Arresting Officer" is used by the Division of Motor Vehicles ("DMV") in the driver's license revocation process. In this case, Deputy Lilly prepared a Statement of Arresting Officer. The Statement, however, was not mailed to the DMV until December 29, 1997, more than 48 hours after Burks' arrest. The statement was stamped as received at the DMV on December 31, 1997.

On January 7, 1998, Burks' driver's license was suspended by the DMV. On January 14, 1998, Burks' attorney sent a letter to Deputy Lilly, requesting certain information concerning the blood test, including the results, and the type and manner of blood test that was conducted.

On January 26, 1998, Deputy Lilly responded to Burks' attorney by letter, stating that Deputy Lilly did not have the requested information, but the information could be obtained by Burks from Raleigh General Hospital.

On April 14, 1998, an administrative hearing on the DMV license suspension was held before the DMV. Deputy Lilly testified that he did not have the results of the blood test. The DMV Commissioner indicated that, because the blood test was done at Burks' request, Deputy Lilly had no duty to obtain the results.

On June 15, 1998, the DMV entered an administrative "final order," effective the same date, suspending Burks' driver's license for 6 months. The DMV order states: Burks "has not shown that he was prejudiced by the officer's failure to file the [arresting officer's] statement within forty-eight hours."

Burks appealed the DMV decision to circuit court. On September 4, 1998, the circuit court entered an order reversing the DMV's revocation of Burks' license. In so ruling, the circuit court set forth the following rationale:

1. The reasoning behind this relates to the failure of the arresting officer, pursuant to WV Code, 17C–5A–1, to submit within forty-eight (48) hours, an affidavit as required by the statute. [I]t is clear that the officer did not mail his affidavit within forty-eight (48) hours of the arrest as he is required to do by statute, and therefore, has failed to comply with the mandatory requirements of [the] statute.

2. The failure of the officer to supply the results of the blood test is a substantial denial of due process and a fair and full hearing on the issues[.]

## II.

### Standard of Review

The circuit court's challenged rulings were matters of law that we review *de novo*.

## III.

### Discussion

#### A.

### 48 Hours

■ The first issue we consider is whether Deputy Lilly's failure to mail the Statement of Arresting Officer to the DMV within 48 hours of Burks' arrest is grounds to overturn the DMV license suspension.

The DMV takes the position that Deputy Lilly's failure to mail the Statement of Arresting Officer to the DMV within 48 hours did not bar the DMV from revoking Burks' license. The DMV cites us to *Coll v. Cline*, 202 W.Va. 599, 606, n. 12, 505 S.E.2d 662, 669, n. 12 (1998), where we observed that time requirements for filing an arresting officer's statement applied only to the officer, and had no application to the Commissioner.

Burks takes the position that the requirement that the arresting officer mail the report of a DUI arrest to the DMV Commissioner within 48 hours is a condition precedent to the Commissioner having subject matter jurisdiction of a license revocation case. Because the Statement of Arresting Officer was mailed out of time,

Burks says that the Commissioner never acquired jurisdiction over the case. Consequently, Burks argues, the proceedings before the Commissioner are void, and the circuit court properly dismissed the revocation of Burks' driver's license.

■ We agree with the DMV that the 48–hour reporting duty in *W.Va.Code,* 17C–5A–1(b) [1994] is directed to and imposed on the arresting officer, and not on the DMV. We further recognized in *Coll v. Cline, supra,* and in *Dolin v. Roberts,* 173 W.Va. 443, 317 S.E.2d 802 (1984) that technical and nonprejudicial noncompliance with reporting time requirements that are imposed on a law enforcement officer was not a jurisdictional impediment to the DMV taking action regarding a license suspension.[1]

■ Consequently, we hold that a law enforcement officer's failure to strictly comply with the DUI arrest reporting time requirements of *W.Va.Code,* 17C–5A–1(b) [1994] is not a jurisdictional impediment to the commissioner of the Division of Motor Vehicles taking administrative action based on the arrest report, unless there is actual prejudice to the driver as a result of such failure.

Applying this standard to the instant case, the brief delay in submitting the arresting officer's statement was *de minimis,* and

there was no prejudice shown. The circuit court's ruling on the delay issue was erroneous and is reversed.

### B.

### *Blood Test*

■ The second issue we consider is whether Deputy Lilly's failure to provide Burks with the results of and information about the blood test was grounds to overturn the license suspension.

*W.Va.Code,* 17C–5–9 [1983] states that a driver arrested for DUI has a right to demand a blood test, and the "analysis disclosed by such ... test shall be made available to such arrested person forthwith upon demand."[2] *See Moczek v. Bechtold,* 178 W.Va. 553, 363 S.E.2d 238 (1987). Since the blood test was requested by Burks, the DMV argues that the hospital, and not Deputy Lilly, had the burden of producing the results—and that Deputy Lilly was not required to act as an agent of Burks to obtain the results. Furthermore, the DMV argues that there is nothing in the record to suggest that the blood test results were exculpatory.

Burks argues that the blood test provided for by *W.Va.Code,* 17C–5–9 [1983] must be administered pursuant to the provisions of *W.Va.Code,* 17C–5–6 [1981].[3] This statute

1. Of course, "sauce for the goose" is also "sauce for the gander." We do not believe that it is intended in our statutory scheme, absent specific legislative direction, that either the DMV *or* a driver should be denied important rights (such as an opportunity for a hearing on the merits) due to inadvertent, *de minimis,* nonprejudicial, good-faith, or other "technical" failures to meet the time deadlines that are set forth in DMV administrative procedures. As we stated in *Sprouse v. Clay Communication, Inc.,* 158 W.Va. 427, 460, 211 S.E.2d 674, 696:

> This Court's policy with regard to procedural irregularities which needlessly interfere with a disposition on the merits was succinctly stated in the recent case of *Rosier v. Garron,* 156 W.Va. 861, 199 S.E.2d 50 (1973), where the Court said:
>> (T)he distinction between procedural rules and substantive rights is frequently illusory. However, to the extent possible, under modern concepts of jurisprudence, legal contests should be devoid of those sporting characteristics which gave law the quality of a game of forfeits or trial by ambush.

2. *W.Va.Code,* 17C–5–9 [1983] states that:

> Any person lawfully arrested for driving a motor vehicle in this State while under the influence of alcohol, controlled substances or drugs shall have the right to demand that a sample or specimen of his blood, breath or urine be taken within two hours from and after the time of arrest, and that a chemical test thereof be made. The analysis disclosed by such chemical test shall be made available to such arrested person forthwith upon demand.

3. *W.Va.Code,* 17C–5–6 [1981] states:

> Only a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his employment, acting at the request and direction of the law-enforcement officer, may withdraw blood for the purpose of determining the alcoholic content thereof. These limitations shall not apply to the taking of a breath test or a urine specimen. In withdrawing blood for the purpose of determining the alcoholic content thereof, only a previously unused and sterile needle and sterile vessel may be utilized and the withdrawal shall otherwise be in strict accord with accepted medical practices. A nonalcoholic antiseptic shall be

says that the results of a blood test taken at the direction of law enforcement must be provided to the arrestee upon request.

In the instant case, the record is unclear as to what degree of involvement the arresting officer had with the taking of blood from Burks. Burks argues that the officer should have: (1) taken Burks into the hospital, and directed hospital personnel to perform a blood test using statutorily prescribed methods (apparently police officers frequently carry blood test kits that meet statutory criteria); (2) followed the customary practice of taking and sending the blood sample to the state police lab for testing; and (3) then given the results to Burks and the commissioner. Burks suggests that this procedure is required whenever a driver arrested for DUI requests a blood test.

We observe that the repeated amendment of our DUI statutes has left them somewhat complex and overlapping—with several statutes frequently addressing the same issue. This appears to be the case in the "blood-test request" provisions of W.Va.Code, 17C–5–6 [1981] and –9 [1983]. And these provisions, in turn, must be parsed and read in conjunction with other parts of the statutory criminal and administrative DUI law.

A detailed exegesis of these numerous statutes here would serve little purpose. Taken together, and in light of our previous decisions, we agree with Burks that under our DUI scheme, a DUI-arrested driver is deprived of a significant right if he or she requests a blood test, and is given only an opportunity to have a blood test that does not meet statutory evidentiary standards. There is little point in having the right to demand a potentially exculpatory blood test, if the test that is given is not up to the evidentiary standard for blood tests set forth in the statutes.

■ We therefore hold that a person who is arrested for driving under the influence who requests and is entitled to a blood test, pursuant to W.Va.Code, 17C–5–9 [1983], must be given the opportunity, with the assistance and if necessary the direction of the arresting law enforcement entity, to have a blood test that insofar as possible meets the evidentiary standards of 17C–5–6 [1981].

■ The circuit court concluded that the arresting officer's failure to obtain the results of the blood test from the hospital, and to furnish the results to Burks, was fatal to the DMV's ability to suspend the petitioner's license. However, upon reading all of the statutes together we conclude that the requirement that a driver arrested for DUI must be given a blood test on request does not include a requirement that the arresting officer obtain and furnish the results of the requested blood test. Placing such a requirement on the arresting officer can only be fairly read into the statutory scheme, if the blood test is the officer's "designated" test—and not a test that is requested by the driver. W.Va.Code, 17C–5–6 [1981]. Of course, the arresting officer cannot pose an impediment to the driver's obtaining the results of and information about the test.

Burks was vigorously represented by counsel in the proceedings before the commissioner, and Burks' counsel had subpoena powers available to him pursuant to W.Va.Code, 17C–5A–2(b) [1996] to obtain both the results of the blood test and information about the methodology used in the test. Burks was aware well before the hearing that the officer was not intending to obtain those results and that information. Burks did not show at the DMV hearing that he had requested the

used for cleansing the skin prior to venapuncture. The person tested may, at his own expense, have a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his employment, of his own choosing, administer a chemical test in addition to the test administered at the direction of the law-enforcement officer. Upon the request of the person who is tested, full information concerning the test taken at the direction of the law-enforcement officer shall be made available to him. No person

who administers any such test upon the request of a law-enforcement officer as herein defined, no hospital in or with which such person is employed or is otherwise associated or in which such test is administered, and no other person, firm or corporation by whom or with which such person is employed or is in any way associated, shall be in anywise criminally liable for the administration of such test, or civilly liable in damages to the person tested unless for gross negligence or willful or wanton injury

results or other information about the test from the hospital, or that the hospital had refused to provide the results or information, or that the results or information would have been favorable to Burks.

We conclude that the circuit court erred in finding that the DMV was barred from suspending Burks' license because of the failure of the law enforcement officer to obtain and give the results of the blood test to Burks.

## IV.

### *Conclusion*

The circuit court's order is reversed and this case is remanded for further proceedings consistent with this opinion.

Reversed.

Judge JOHN S. HRKO, sitting by special assignment.

Justice SCOTT did not participate in the decision of the Court.