# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Patricia Reed, Commissioner of the**
**West Virginia Division of Motor Vehicles**
**Respondent Below, Petitioner**

**vs) No. 14-1018** (Kanawha County 14-AA-45)

**Desiree Divita,**
**Petitioner Below, Respondent**

**FILED**

September 18, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Patricia Reed, Commissioner of the West Virginia Division of Motor Vehicles (hereinafter "the DMV"), by counsel Janet E. James, appeals the August 29, 2014, order of the Circuit Court of Kanawha County, which reversed the final order of the DMV that revoked respondent's driver's license for driving under the influence of controlled substances (hereinafter "DUI").[1] Respondent Desiree Divita, by counsel David Pence, filed a response. The DMV filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

At 12:05 a.m. on November 13, 2010, Sgt. Larry O'Bryan of the West Virginia State Police initiated a traffic stop on respondent's vehicle on I-64 east. Sgt. O'Bryan noted that respondent's vehicle was weaving, driving on the shoulder and almost struck a guardrail. Respondent testified that she dropped her cell phone on the floor near the accelerator of her vehicle which caused her to jerk the steering wheel. According to the testimony of Sgt. O'Bryan, during the stop, as respondent pulled her driver's license from her purse, Sgt. O'Bryan saw in plain view a plastic baggie in her purse containing pills. He then had respondent exit her vehicle.

Sgt. O'Bryan testified that respondent's speech was slurred and that she seemed confused about the traffic stop. Sgt. O'Bryan asked respondent to place her purse on the trunk of the car, and then proceeded to search it. Sgt. O'Bryan discovered 13 alprazolam pills and 15 oxycodone pills in respondent's purse. He then placed respondent under arrest. At the detachment, Sgt.

---

[1] Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, we have replaced the original Respondent, Steven O. Dale, with Patricia Reed, who is the current Acting Commissioner of the West Virginia Division of Motor Vehicles.

1

O'Bryan asked respondent to perform the walk and turn and one leg stand test. Respondent willingly complied and failed both tests.

Respondent and Sgt. O'Bryan requested to have respondent's blood drawn. A blood sample was taken and Sgt. O'Bryan submitted the blood sample to the West Virginia State Police Lab, where the sample was tested for alcohol only, the results of which were negative, as memorialized in a May 4, 2010, letter from the West Virginia State Police Lab. A Forensic Laboratory Report dated January 24, 2011, memorialized that "[p]ursuant to the conversation with Sgt. Larry O'Bryan on December 6, 2010, all items of evidence in this case are being returned prior to Toxicology Drug Analysis. If events should require testing of these samples, please resubmit them to the laboratory." The sample was subsequently returned to Sgt. O'Bryan who destroyed the blood sample, without informing petitioner, respondent's counsel, or the court. Sgt. O'Bryan testified that he ordered the sample destroyed at the conclusion of the criminal case, but before the administrative hearing, and that he destroyed the sample rather than preserve it because the State Police Lab temporarily lost its accreditation to do forensic blood testing.

After the administrative hearing, an order was entered effective May 12, 2014, that affirmed the revocation of respondent's license for driving under the influence of a controlled substance. The hearing examiner found that in spite of the lack of blood results, there was sufficient evidence to show that respondent was driving under the influence of controlled substances, finding "the question is not about a blood test."

Respondent appealed that order to the Circuit Court of Kanawha County. The circuit court held that the hearing examiner's failure to address the spoliation of evidence was arbitrary, capricious, and clearly wrong; reversed the order of the DMV and dismissed the matter. Overruling the final order issued by the Commissioner, the circuit court found that Sgt. O'Bryan never requested that the blood sample be tested for controlled substances, nor did he send the sample to an out of state laboratory or preserve the blood sample for future testing, and that his actions violated respondent's right to due process. The DMV appeals the August 29, 2014, order of the Circuit Court of Kanawha County which reversed the ruling of the hearing examiner, and reversed the revocation of respondent's driver's license.

This Court has previously established the standard of review of a circuit court's order deciding an administrative appeal as follows:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). Further, "[i]n cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. pt. 2, *id*.

2

Petitioner asserts that the circuit court erred because the lack of toxicological analysis is not a basis for the reversal of the revocation.[2] Relying upon this Court's holding in syllabus point three of *In re Burks*, 206 W.Va. 429, 525 S.E.2d 310 (1999), in which we held, "[t]he requirement that a driver arrested for DUI must be given a blood test on request does not include a requirement that the arresting officer obtain and furnish the results of that requested blood test[,]" petitioner argues that since respondent made no effort to obtain the results for the analysis, and was not precluded from securing an independent test upon the blood sample, that the lack of toxicological analysis is not relevant, and that other evidence in the record should be relied upon for the revocation of respondent's license. Respondent argues that she had no reason to believe that the sample would not be tested, or that the Lab would not protect her blood sample and have the results at her administrative hearing, and that she was denied due process.

"Due process of law, within the meaning of the State and Federal constitutional provisions, extends to actions of administrative officers and tribunals, as well as to the judicial branches of the governments. Syl. pt. 2, *State ex rel. Ellis v. Kelly*, 145 W.Va. 70, 112 S.E.2d 641 (1960)." Syl. Pt. 1, *McJunkin Corp. v. West Virginia Human Rights Commission*, 179 W.Va. 417, 369 S.E.2d 720 (1988). According to West Virginia Code § 17C-5-9(1983),

> Any person lawfully arrested for driving a motor vehicle in this State while under the influence of alcohol, controlled substances, or drugs shall have the right to demand that a sample or specimen of his blood, breath or urine be taken within two hours from and after the time of arrest, *and that a chemical test thereof be made. The analysis disclosed by such chemical test shall be made available to such arrested person forthwith upon demand.*

(Emphasis added) Further, pursuant to West Virginia Code § 17C-5A-1(b), in part, an officer's DUI arrest report submitted to the DMV "shall include the specific offense with which the person is charged and, if applicable, a copy of the results of any secondary tests of blood, breath or urine."

In *Reed v. Hall*, 235 W.Va. 322, 773 S.E.2d 666 (2015), a driver was denied the results of his blood test at his administrative hearing after the arresting officer neglected to submit the sample to the West Virginia State Police Lab for testing. Distinguishing *Burks*, we held that "[t]his Court's holding in *Burks* was simply that the police officer did not have the obligation to "obtain the results" of the blood test. In other words, those results of the *completed blood test* were available to the driver, and the failure of the driver to obtain those results was not attributable to police inaction." *Hall*, 235 W.Va. at ___, 773 S.E.2d at 676 (internal citations omitted). As a result, we found that the driver was denied the statutory and due process rights, under West Virginia Code § 17C-5-9, to have his blood tested independently.

In the case sub judice, as in *Hall*, the investigating officer complied with one part of West Virginia Code § 17C-5-9. That is, respondent and the investigating officer requested a blood test,

---

[2] Petitioner also asserts that there was no conflict in the evidence, that there was no spoliation of evidence, and that the record supports the revocation of respondent's driver's license for driving under the influence. As this matter is resolved on other grounds, we decline to address those assignments of error at this time.

and the test was administered. However, as in *Hall*, the statute is not satisfied as the blood sample was destroyed at the investigating officer's request before the sample was tested for controlled substances. Importantly, the blood sample was within the officer's complete dominion and control. *See Hall*, 235 W.Va. at ___, 773 S.E.2d at 675. As we cautioned in *Burks*, "[o]f course, the arresting officer cannot pose an impediment to the driver's obtaining the results of and information about the test." *Burks*, 206 W.Va. at 433, 525 S.E.2d at 314 (1999).

Here, the investigating officer's actions certainly served as an impediment to respondent's ability to obtain the results of her blood sample. The officer did not simply fail to submit the blood sample to the lab, but after the submission of the sample, requested that the sample be returned without toxicology analysis and then had the sample destroyed. Respondent was not only unable to receive the results of any toxicological analysis from the West Virginia State Police Lab, but was also prevented from securing her own independent test of the blood sample. It is clear under these circumstances that due to the actions of the officer, respondent was denied her statutory and due process rights under West Virginia Code § 17C-5-9.

Petitioner argues further that our holding in *Hall* contravenes this Court's oft-stated holding that there is no statutory requirement that proof of a motorist driving under the influence of alcohol be established by secondary chemical test results. *See* Syl. Pt. 1, *Albrecht v. State*, 173 W.Va. 268, 314 S.E.2d 859 (1984). We agree that West Virginia Code § 17C-5-9 clearly does not require a blood test, and have even acknowledged that "[u]nder the Code law enforcement officers are under no duty to inform the defendant of his right to additional tests." *State v. York,* 175 W.Va. 740, 741, 338 S.E.2d 219, 221 (1985). However, this Court previously recognized the implications when a DUI suspect requests a blood test and is denied,

> W.Va. Code § 17C-5-9 accords an individual arrested for driving under the influence of alcohol, controlled substances, or drugs a right to demand and receive a blood test within two hours of his arrest. Furthermore, this statutory right is hardly a new development. Historically, one charged with intoxication has enjoyed a constitutional right to summon a physician at his own expense to conduct a test for alcohol in his system. To deny this right would be to deny due process of law because such a denial would bar the accused from obtaining evidence necessary to his defense. . . . The defendant's right to *request and receive* a blood test is an important procedural right that goes directly to a court's truth-finding function.

*Id.* (citations omitted) (emphasis added).

Consequently, we find that the circuit court did not err in reversing the order of the DMV, and affirm the circuit court's finding that the actions of the investigating officer imposed a significant impediment to respondent's ability to test the blood sample and violated her statutory and due process rights.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  September 18, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II