# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Everett Frazier, Commissioner,**
**West Virginia Division of Motor Vehicles,**
**Petitioner Below, Petitioner**

**FILED**

**February 3, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 19-0056** (Kanawha County 18-AA-230)

**Charles L. Hussing, Jr.,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Everett Frazier, Commissioner, West Virginia Division of Motor Vehicles ("Commissioner"), by counsel Janet E. James, appeals the Circuit Court of Kanawha County's December 18, 2018, final order denying petitioner's appeal from the Office of Administrative Hearings's reversal of the Commissioner's revocation of Respondent Charles L. Hussing, Jr.'s driver's license.[1] Respondent, pro se, did not file a response before this Court.[2]

The Court has considered the parties' briefs and record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the circuit court is reversed, and this case is remanded to the circuit court for entry of an order reversing the June 26, 2018, order from the Office of Administrative Hearings and reinstating the revocation of respondent's driver's license.

On May 6, 2011, Trooper Jason Gallaher of the West Virginia State Police was dispatched to a single-vehicle crash on Tyrone Road in Morgantown, West Virginia. Once there, he discovered that a red pickup truck had struck a utility pole, and while the truck's headlights were still on, the truck was vacant. Trooper Gallaher was approached by a woman who told him that her brother had been the one driving the truck and that he was at her residence nearby. Shortly

---

[1] At the time of the filing of the appeal in this case, Patricia S. Reed was commissioner of the West Virginia Division of Motor Vehicles. Ms. Reed retired on April 1, 2019, and Everett Frazier was later appointed as the commissioner. Accordingly, the appropriate party has been substituted pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

[2] This Court entered an amended scheduling order on June 6, 2019, directing respondent to file a brief or summary response in compliance with Rule 10 of the West Virginia Rules of Appellate Procedure within ten days of that order.  However, respondent failed to file any type of response with this Court.

1

thereafter, respondent began walking toward the officer, who noted that respondent was "having trouble maintaining his balance," seemed "disoriented [and] confused," and was having "trouble with his speech." However, Trooper Gallaher did not smell alcohol in respondent's breath. The officer observed that respondent had slurred speech; "red and glassy, bloodshot" eyes; "constricted pupils;" and he "seemed tired." The officer asked respondent to perform field sobriety tests, and he agreed. Respondent passed the horizontal gaze nystagmus test but failed the "walk and turn" test and the "one-leg stand" test. On the preliminary breath test, respondent's blood alcohol concentration level was zero.

Trooper Gallaher asked respondent if he had taken medication or other substances, and respondent admitted that he had consumed marijuana earlier in the evening. The officer arrested respondent and found a "smoking device" and small bag of what respondent admitted was marijuana on respondent's person. Trooper Gallaher took respondent to the hospital, and his blood was drawn. However, no analysis of that sample was presented during the Office of Administrative Hearings ("OAH") proceedings. According to the circuit court, there is no indication in the record or assertion by either party that analysis of that blood sample was ever performed.

Petitioner revoked respondent's driving privileges by letter dated October 30, 2013, and respondent filed a request for a hearing with the OAH.[3] That hearing was conducted on April 10, 2014, and on June 26, 2018, the OAH entered its order reversing the DMV's order of revocation. In that order, the OAH found that the investigating officer had an articulable reasonable suspicion to stop and further investigate the single-vehicle accident. It also found that the officer observed that respondent exhibited physical indicia of impairment, as well as a loss of coordination and balance, which was considered in conjunction with respondent's inability to successfully perform the standardized field sobriety tests, respondent's admission to the officer that he had smoked marijuana earlier that day, the presence of a baggie containing a substance believed to be marijuana, and respondent's possession of a smoking device. That established that the officer had reasonable grounds to believe that respondent had been driving the motor vehicle while under the influence of controlled substances and/or drugs and that he was lawfully arrested for a DUI offense.

The OAH went on to find that while petitioner agreed to submit to the subsequent blood test and such blood draw was performed, "[t]he record in this matter does not include an affidavit to establish that such test was administered by an employee medically trained and medically authorized to draw blood and that the blood was drawn in accordance with specific State

---

[3] Respondent's counsel below, S. Sean Murphy, filed an attachment to the request for an OAH hearing. That attachment provides as follows:

> No probable cause for stop, no probable cause for arrest, improper administration of field sobriety tests, no lawful grounds to submit statement of arresting officer, failure to timely submit statement of arresting officer, failure to advise of consequences to submit to designated tests, constitutional violations of right to remain silent, improper administration of secondary chemical tests, lack of evidence to support contention that Mr. Goff [sic] operated a motor vehicle under the influence plus all other constitutional and statutory and common law grounds available.

regulations and facility procedures." Further, it found that although the blood sample was purportedly sent to the West Virginia State Police Forensic Laboratory for testing, almost three years after the draw, the test result was not available. According to the OAH, "[t]he record is further devoid of any explanation for the failure to provide the blood analysis result. Further, there was no other evidence or testimony to establish the quantity of marijuana that [respondent] had admittedly smoked 'earlier' or the level of cannabis in [respondent's] blood."

The OAH determined that this Court's holding in *Reed v. Hall*, 235 W. Va. 322, 733 S.E.2d 666 (2015),

> is clearly controlling in that once the [driver] agrees to submit to the [i]nvestigating [o]fficer's request, and it is clear that the test will be carried out, the [driver] would see little incentive or understand the significance of then demanding a blood draw to ensure that his right to view the results of the same are protected. Therefore, it is the position of the Chief Hearing Examiner that an individual who voluntarily submits to a blood sample at the request of the Investigating Officer should be afforded the same due process protections as those who demand a blood test. . . . Given this precedent, [respondent] was denied the ability to present potentially exculpatory evidence of his blood and was, therefore, denied due process rights under West Virginia Code § 17C-5-9 when the blood sample analysis was not available at the time of the hearing . . . .

Thereafter, it concluded that respondent's due process rights were violated and reversed the order of revocation.

On July 26, 2018, petitioner appealed the OAH's final order to the Circuit Court of Kanawha County. On December 18, 2018, the circuit court entered its final order denying petitioner's appeal. In that final order, the circuit court found that the OAH properly adjudicated the matter and accurately applied the relevant law. Petitioner appeals from that order.

On appeal, petitioner asserts a single of assignment of error: The circuit court erred in rescinding the revocation of respondent's driver's license when the evidence showed that he was driving under the influence of alcohol, controlled substances, or drugs. In support, petitioner argues that no secondary chemical test is required to show that a person drove under the influence, the circuit court improperly applied a defense not raised below, and the circuit court improperly found that the absence of a blood test result violated respondent's due process rights.

> 1. "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996).

> 2. "In cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion

3

standard and reviews questions of law *de novo*." Syl. Pt. 2, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996).

*Hall*, 235 W. Va. at 324, 773 S.E.2d at 668, syl. pts. 1 and 2.

West Virginia Code § 17C-5-9 (1983) provides as follows:

Any person lawfully arrested for driving a motor vehicle in this State while under the influence of alcohol, controlled substances or drugs shall have the right to demand that a sample or specimen of his blood, breath or urine be taken within two hours from and after the time of arrest, and that a chemical test thereof be made. The analysis disclosed by such chemical test shall be made available to such arrested person forthwith upon demand.[4]

One of the key holdings of our prior cases addressing this statute is that

"[a] person who is arrested for driving under the influence who requests and is entitled to a blood test, pursuant to W. Va.Code, 17C–5–9 [1983], must be given the opportunity, with the assistance and if necessary the direction of the arresting law enforcement entity, to have a blood test that insofar as possible meets the evidentiary standards of 17C–5–6 [1981]." Syl. Pt. 2, *In re Burks,* 206 W.Va. 429, 525 S.E.2d 310 (1999).

*Hall*, 235 W. Va. at 324, 773 S.E.2d at 668, syl. pt. 5. In addition, "'[t]he requirement that a driver arrested for DUI must be given a blood test on request does not include a requirement that the arresting officer obtain and furnish the results of that requested blood test.' Syl. Pt. 3, *In re Burks,* 206 W.Va. 429, 525 S.E.2d 310 (1999)." *Hall*, 235 W. Va. at 324, 773 S.E.2d at 668, syl. pt. 6. As petitioner points out, respondent did not demand a blood test or the results of the test he knew was performed. Therefore, petitioner argues that he was not required to provide such blood test results to respondent. In addition, petitioner cites respondent's counsel's failure to argue that respondent was entitled to those results.

Rule 10(d) of the West Virginia Rules of Appellate Procedure provides, in relevant part, as follows:

The respondent must file a brief in accordance with this subsection, or a summary response in accordance with subsection (e) of this Rule. . . . Unless otherwise provided by the Court, the argument section of the respondent's brief must specifically respond to each assignment of error, to the fullest extent possible. If the respondent's brief fails to respond to an assignment of error, the Court will assume that the respondent agrees with the petitioner's view of the issue.

---

[4] This statute was amended effective July 12, 2013. However, we apply the version of the statute in place at the time of the May 6, 2011, traffic incident that is the basis for respondent's license revocation and the resultant proceedings.

As set forth above, respondent failed to file a brief or summary response before this Court. For these reasons, we find that the circuit court erred in affirming the OAH's June 26, 2018, order reversing the revocation of respondent's driver's license. We hereby remand this matter to the circuit court with instructions to enter an order reinstating the revocation of respondent's driver's license.

Reversed and remanded.

**ISSUED:** February 3, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

5