**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

Everett Frazier,
Commissioner of the West Virginia Division of Motor Vehicles,
Respondent Below, Petitioner

**vs.)  No. 20-0310** (Kanawha County 19-AA-99)

George Gilbert,
Petitioner Below, Respondent

**MEMORANDUM DECISION**

Petitioner Everett Frazier, Commissioner of the West Virginia Division of Motor Vehicles ("DMV"), by counsel Elaine L. Skorich, appeals the April 28, 2020, order of the Circuit Court of Kanawha County, affirming the order of the Office of Administrative Hearings ("OAH") reinstating the driving privileges of respondent George Gilbert. Respondent is self-represented and filed a response and supplemental response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' submissions and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the circuit court is reversed, and this case is remanded to the circuit court for entry of an order consistent with this decision.

Respondent was arrested for driving under the influence of controlled substances ("DUI") on February 8, 2015.[1] During the course of his investigation of the offense, investigating officer Senior Trooper J.R. Tupper of the West Virginia State Police, requested that respondent submit to a secondary chemical test of blood. Respondent acquiesced to the test and his blood sample was drawn. Senior Trooper Tupper took custody of the blood sample and transmitted the same to the West Virginia State Police Laboratory for testing. However, the blood sample was never tested.

---

[1] Inasmuch as we are reversing and remanding this case to the circuit court for further proceedings on grounds that do not bear on the circumstances surrounding respondent's arrest, those circumstances are not addressed in detail herein.

1

Following his arrest, the DMV sent respondent an order dated April 22, 2015, which revoked his driver's license. Respondent appealed the revocation and, on May 1, 2015, submitted a written objection and hearing request form to the OAH on which he checked a box to indicate that he wished "to challenge the results of the secondary chemical test of the blood, breath or urine."

An administrative hearing was conducted before the OAH on July 28, 2016. On August 6, 2019, the OAH reversed the order of revocation and referenced West Virginia Code § 17C-5-9, which provides that:

> [a]ny person lawfully arrested for driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs shall have the right to demand that a sample or specimen of his or her blood or breath to determine the alcohol concentration of his or her blood be taken within two hours from and after the time of arrest and a sample or specimen of his or her blood or breath to determine the controlled substance or drug content of his or her blood, be taken within four hours from and after the time of arrest, and that a chemical test thereof be made. The analysis disclosed by such chemical test shall be made available to such arrested person forthwith upon demand.

The OAH concluded that in the instant case, "the evidence is clear that [respondent] asked for an independent blood test, a sample was taken, however no analysis was completed through no fault of the [respondent]." Accordingly, the OAH found that respondent was denied his "statutory and due process rights under West Virginia Code § 17C-5-9 which is grounds for reversal" of the revocation of respondent's license.

Petitioner appealed the OAH's order to the Circuit Court of Kanawha County. By order entered on April 28, 2020, the circuit court affirmed the OAH's order. The court found that as to the blood sample provided by petitioner following his arrest that the sample was provided at the request of the officer. Specifically, the court noted that respondent "willingly complied" with the investigating officer's request.

Before the circuit court, petitioner argued that respondent's statutory and due process rights are not implicated when a blood sample is destroyed prior to testing because the officer requested that respondent provide a blood sample for testing and respondent simply acquiesced to provide the sample. However, the court, referencing this Court's decisions in *Reed v. Hall*, 235 W. Va. 322, 773 S.E.2d 666 (2015), and *Reed v. Divita*, No. 14-1018, 2015 WL 5514209 (W. Va. Sept. 15, 2018) (memorandum decision), found that determination of a violation of respondent's statutory and due process rights was not "limited to a simple determination regarding who requested the blood draw." The court reasoned that the "impetus upon the driver to request a blood draw is removed where, as in this case, the driver has been assured by the officer that a blood draw will occur if they acquiesce." In conclusion the court found that in accord with *Hall* and *Divita*, respondent's due process and statutory rights were violated regardless of whether he requested the blood test because his "right to have his blood sample independently tested was withheld." It is from the circuit court's April 28, 2020, order that petitioner now appeals.

In *Frazier v. Fouch*, 244 W. Va. 347, 853 S.E.2d 587 (2020), we reiterated the standard of review to govern this matter.

> "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

> "In cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. Pt. 2, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

*Fouch* at Syl. Pts. 1 and 2. Guided by this standard, we review petitioner's arguments. On appeal, petitioner advances two assignments of error. First, petitioner alleges that the circuit court erred in finding that there was a violation of West Virginia Code § 17C-5-9 because respondent did not request a blood test. Second, petitioner argues that the circuit court erred in excluding evidence that showed that respondent was under the influence of controlled substances at the time of his arrest.

As to petitioner's first assignment of error, we agree with petitioner and find that as respondent did not demand or request a blood draw on the date of his arrest, West Virginia Code § 17C-5-9 is not applicable to this case. Below, the OAH found that respondent "asked for an independent blood" test; however, such a finding is not supported by the record, including the transcript of the July 28, 2016, administrative hearing. The only testimony at the administrative hearing regarding respondent's agreement to provide a blood sample was that the sample was provided at the request of the investigating officer.[2]

In *Frazier v. Bragg*, 244 W. Va. 40, __, 851 S.E.2d 486, 492 (2020), this Court held that because a "blood draw was performed at the request of law enforcement officers, the provisions of West Virginia Code § 17C-5-6 (2013), rather than West Virginia Code § 17C-5-9, apply."

West Virginia Code § 17C-5-6 provides, in pertinent part, that

> [o]nly a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his or her employment, acting at the request and direction of the law-enforcement officer, may withdraw blood to determine the alcohol concentration in the blood, or the concentration in the blood of a controlled

---

[2] At the administrative hearing, the investigating officer was asked "did you ask [respondent] to [provide] a blood sample?" To which the investigating officer responded, "I did, yes."

3

substance, drug, or any combination thereof . . . . The person tested may, at his or her own expense, have a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his or her employment, of his or her own choosing, administer a chemical test in addition to the test administered at the direction of the law-enforcement officer. Upon the request of the person who is tested, full information concerning the test taken at the direction of the law-enforcement officer shall be made available to him or her.

This Court has long held that "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. Gen. Daniel Morgan Post No. 548, V.F.W.*, 144 W. Va. 137, 107 S.E.2d 353 (1959). As to West Virginia Code § 17C-5-6, the *Bragg* Court found that

> [t]he language of West Virginia Code § 17C-5-6 is clear and unambiguous that a law enforcement officer's duty to make available information about the test performed at the request of the officer (including blood test results) does not exist absent a request for such information by the person who is tested.

*Bragg*, 244 W. Va. at ___, 851 S.E.2d at 494. Simply "marking the box on the hearing request form" that the driver "wish[ed] to challenge the results of the secondary chemical test of the blood, breath or urine" is not enough. *Id*.

In the instant case, the sample of respondent's blood was collected for testing at the request of the investigating officer. There is no indication in the record, aside from respondent's simple check on a box on the hearing request form, that he wished to challenge the results of the blood test at the administrative hearing. Respondent has not alleged that he requested any information concerning the blood sample either for the purpose of having the sample independently tested or for use otherwise at the administrative hearing. Accordingly, we find that West Virginia Code § 17C-5-6, as opposed to West Virginia Code § 17C-5-9, applies to the instant case. As West Virginia Code § 17C-5-6 applies to the facts of the underlying case, we find that the OAH and the circuit court's reliance on West Virginia Code § 17C-5-9 and the case law construing it (i.e., *Hall* and *Divita*) was misplaced and clearly wrong.[3]

In its second assignment of error, petitioner argues that the circuit court erred in excluding evidence that showed that respondent was under the influence of controlled substances at the time

---

[3] As this Court noted in *Bragg*, the *Hall* and *Divita* cases both "involved drivers who were arrested for DUI and . . . demanded that a sample of blood be taken pursuant to West Virginia Code § 17C-5-9 (2013)." *Bragg,* 244 W. Va. at ___ n.2, 851 S.E.2d at 490 n.2. In both *Hall* and *Divita*, this Court upheld the reversal of the drivers' license revocation orders because their blood samples were taken but not tested. However, in the instant case, unlike *Hall* and *Divita*, respondent did not demand a blood test be taken, but rather agreed to submit to a blood test requested by the investigating officer. Accordingly, respondent's case must be decided under West Virginia Code § 17C-5-6 and not West Virginia Code § 17C-5-9.

4

of his arrest. Specifically, petitioner contends that in its final order, the circuit court acknowledged that there was evidence of respondent's use of controlled substances but failed to consider such evidence by determining that the violation of respondent's due process rights under West Virginia Code § 17C-5-9 was dispositive. Applying the reasoning set forth above, we agree with petitioner and find that the lack of analysis of the blood sample provided by respondent must simply be weighed along with the other evidence in the case.

Having determined that the circuit court erred in affirming the OAH's order reversing the revocation of respondent's license based on the fact that respondent's blood sample was not tested, we remand this case for a determination of whether there was sufficient proof under the preponderance of the evidence standard to warrant the administrative revocation of respondent's driver's license.

For the foregoing reasons, the circuit court's April 28, 2020, order is hereby reversed, and the case is remanded for determination of whether there was sufficient proof to warrant the administrative revocation of respondent's license. To facilitate the commencement and conclusion of the remand proceedings, we direct the Clerk of this Court to issue the mandate of this Court contemporaneously with the issuance of this decision.

Reversed and remanded with directions.

**ISSUED:** June 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**DISSENTING:**

Wooton, Justice, dissenting:

I respectfully dissent, as I believe that *Frazier v. Bragg*, 244 W. Va. 40, 851 S.E.2d 486 (2020), the precedent upon which the majority relies, was wrongly decided.[4] Further, the sudden spate of cases involving the same fact pattern as existed in *Bragg* – close to a dozen of them in quick succession, and still counting – leads me to conclude that the failure to process blood samples in cases involving a charge of driving under the influence may be a systemic problem that needs

---

[4] In *Bragg*, where "the blood sample [Mr. Bragg] agreed to give at the request of the investigating officers was never tested and, as was disclosed at the administrative hearing, forever lost[,]" the Court held that because the blood was drawn upon the request of the arresting officer, not upon the demand of the driver, "[t]he absence of blood evidence . . . was simply not at issue in this case." *Id*. at __, 851 S.E.2d at 494.

5

to be addressed.

It is facile for this Court to say that due process comes into play only where an individual charged with DUI has requested a blood test separate and apart from the test requested by the arresting officer. First, we cannot reasonably expect that lay persons are familiar with the provisions of West Virginia Code § 17C-5-9, which bestows this right, and it is frequently impossible for an arrestee to secure legal advice during the narrow time frame within which a blood draw must be taken if it is to have any evidentiary value. Additionally, if an individual has acquiesced to the arresting officer's request for a blood draw - an invasive and sometimes painful procedure – should he or she not reasonably assume that the blood will be tested and the results made known to the defense?[5] Finally, blood tests are expensive, which makes the option of an independent blood test one which is available only to individuals of means.

I also disagree with the majority's conclusion that a remand for determining whether the other evidence is "sufficient proof under the preponderance of the evidence standard to warrant the administrative revocation of [a] driver's license[,]" is a remedy for the loss or destruction of a blood sample that was requested by the arresting officer. Blood test results are scientific evidence which can cast significant doubt upon the arresting officer's wholly subjective observations such as "glassy eyes" or "halting gait." *See, e.g., State v. York*, 175 W. Va. 740, 741, 338 S.E.2d 219, 221 (1985) (noting the importance of a blood test "to a court's truth-finding function.") (citations omitted). This is especially true where, as is frequently the case, those observations come into evidence through introduction of a hearsay document, the DUI Information Sheet, rather than through the testimony of an arresting officer who is subject to cross examination.[6] By allowing license revocation to rest solely upon subjective and circumstantial evidence, after the scientific evidence has been lost, thrown away, or otherwise ignored *by State actors*, this Court has stripped all remaining vestiges of due process from the administrative revocation proceedings.

For these reasons, I respectfully dissent.

---

[5] *Cf. In re Burks*, 206 W. Va. 429, 525 S.E.2d 310 (1999), wherein it was held that "[t]he requirement that a driver arrested for DUI must be given a blood test on request does not include a requirement that the arresting officer obtain and furnish the results of that requested blood test." *Id*. at 430, 525 S.E.2d at 31, Syl. Pt. 3. Surely in a situation where the blood draw is taken at the request of the arresting officer, the arrestee has a reasonable expectation that the officer will follow through by having the blood tested, at a minimum.

[6] *See Crouch v. W. Va. Div. of Motor Vehicles*, 219 W. Va. 70, 631 S.E.2d 628 (2006) (upholding the admissibility of this evidence against statutory and constitutional challenge) and *Frazier v. Fouch*, 244 W. Va. 347, 853 S.E.2d 587 (2020) (holding that the Division of Motor Vehicles has no duty to secure an officer's presence at the hearing).