**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

Everett Frazier,
**Commissioner of the West Virginia Division of Motor Vehicles,**
**Respondent Below, Petitioner**

**vs.)  No. 20-0790** (Kanawha County 19-AA-63)

**Crystal Parker,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Everett Frazier, Commissioner of the West Virginia Division of Motor Vehicles ("DMV"), by counsel Janet E. James, appeals the September 9, 2020, order of the Circuit Court of Kanawha County, affirming the order of the Office of Administrative Hearings ("OAH") reinstating the driving privileges of respondent Crystal Parker. Respondent is self-represented and has made no appearance in this appellate action.

The Court has considered petitioner's brief and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the circuit court is reversed, and this case is remanded to the circuit court for entry of an order consistent with this decision.

Respondent was arrested for driving under the influence of alcohol, controlled substances, and/or drugs ("DUI") at approximately 3:11 a.m., on August 12, 2012.[1] During the course of his investigation of the offense, Officer Jeff Suba of the Fairmont State Police Department, requested that respondent submit to a secondary chemical blood test. Respondent acquiesced and her blood sample was drawn. Officer Suba took custody of the blood sample and transmitted the same to the West Virginia State Police Laboratory for testing. However, the blood sample was never tested.

---

[1] Inasmuch as we are reversing and remanding this case to the circuit court for further proceedings on grounds that do not bear on the circumstances surrounding respondent's arrest, those circumstances are not addressed in detail herein.

Respondent was released from custody approximately two hours following her arrest. Several hours thereafter, at 5:46 p.m. on August 12, 2012, she went to a MedExpress location to have a sample of her urine tested for drugs. The results from the testing of respondent's urine were negative for amphetamines, benzodiazepines, opiates, phencyclidine, methadone, propoxyphene, barbiturates, cocaine, oxycodone, marijuana, methaqualone, and nitrite.

Following her arrest, the DMV sent respondent an order dated September 10, 2012, which revoked her driver's license. Respondent appealed the revocation and, on September 24, 2012, submitted to the OAH a written objection and hearing request form on which she checked a box indicating that she wished "to challenge the results of the secondary chemical test of the blood, breath or urine." Thereafter, in October of 2014, respondent's then-counsel filed a notice of intent to contest the secondary chemical analysis. Counsel highlighted that petitioner had not yet received the results from her blood sample.

An administrative hearing was conducted before the OAH on July 28, 2016. During the hearing, both the investigating officer and respondent testified. The investigating officer stated that he did not receive any results from the West Virginia State Police Laboratory as to any testing performed on the sample of respondent's blood and never "heard anything about it." On May 13, 2019, the OAH reversed the order of revocation and concluded that the "investigating officer's failure to test [respondent's] blood or to make blood evidence available to [respondent] for further testing" was a denial of respondent's statutory due process rights under West Virginia Code § 17C-5-9 (2013).[2] The OAH also concluded that an individual who voluntarily submits to a blood draw at the request of the investigating officer, like respondent, should be afforded the same due process protections as those who demand a blood test. In failing to provide respondent with the results of the testing of her blood sample, the OAH found that respondent was denied her statutory and due process rights under West Virginia Code § 17C-5-9, constituting grounds for reversal of the revocation of respondent's license.

Petitioner appealed the OAH's order to the Circuit Court of Kanawha County. By order entered on September 9, 2020, the circuit court affirmed the OAH's order. The court found that the blood sample provided by petitioner following her arrest was provided at the request of the investigating officer. Petitioner argued that respondent's statutory and due process rights are not implicated when a blood sample is destroyed prior to testing because the officer requested that

---

[2] West Virginia Code § 17C-5-9 provides:

> Any person lawfully arrested for driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs shall have the right to demand that a sample or specimen of his or her blood or breath to determine the alcohol concentration of his or her blood be taken within two hours from and after the time of arrest and a sample or specimen of his or her blood or breath to determine the controlled substance or drug content of his or her blood, be taken within four hours from and after the time of arrest, and that a chemical test thereof be made. The analysis disclosed by such chemical test shall be made available to such arrested person forthwith upon demand.

2

respondent provide a blood sample for testing and respondent simply acquiesced to provide the sample. However, the circuit court, referencing this Court's decisions in *Reed v. Hall*, 235 W. Va. 322, 773 S.E.2d 666 (2015), and *Reed v. Divita*, No. 14-1018, 2015 WL 5514209 (W. Va. Sept. 15, 2018) (memorandum decision), found that the determination of a violation of respondent's statutory and due process rights was not "limited to a simple determination regarding who requested the blood draw." The court reasoned that the "impetus upon the driver to request a blood draw is removed where, as in this case, the driver has been assured by the officer that a blood draw will occur if they acquiesce." The court concluded that in accord with *Hall* and *Divita*, respondent's due process and statutory rights were violated regardless of whether she requested the blood test because her right to have her blood sample independently tested was withheld. It is from the circuit court's September 9, 2020, order that petitioner now appeals.

In *Frazier v. Fouch*, 244 W. Va. 347, 853 S.E.2d 587 (2020), we reiterated the standard of review that governs this matter.

> "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

> "In cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. Pt. 2, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

*Fouch* at Syl. Pts. 1 and 2. Guided by this standard, we review petitioner's argument. In its single assignment of error on appeal, petitioner asserts that the circuit court erred in relying on West Virginia Code § 17C-5-9, rather than West Virginia Code § 17C-5-6 to find that the "due process rights of the respondent were violated by the lack of blood test results." Petitioner contends that because respondent did not demand or request a blood draw on the date of her arrest, West Virginia Code § 17C-5-9 is not applicable to this case. We agree.

In *Frazier v. Bragg*, 244 W. Va. 40, __, 851 S.E.2d 486, 492 (2020), this Court found that because a "blood draw was performed at the request of law enforcement officers the provisions of West Virginia Code § 17C-5-6 (2013), rather than West Virginia Code § 17C-5-9, apply."

West Virginia Code § 17C-5-6 provides, in pertinent part, that

> [o]nly a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his or her employment, acting at the request and direction of the law-enforcement officer, may withdraw blood to determine the alcohol concentration in the blood, or the concentration in the blood of a controlled substance, drug, or any combination thereof . . . . The person tested may, at his or

3

her own expense, have a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his or her employment, of his or her own choosing, administer a chemical test in addition to the test administered at the direction of the law-enforcement officer. Upon the request of the person who is tested, full information concerning the test taken at the direction of the law-enforcement officer shall be made available to him or her.

This Court has long held that "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. Gen. Daniel Morgan Post No. 548, V.F.W.*, 144 W. Va. 137, 107 S.E.2d 353 (1959). As to West Virginia Code § 17C-5-6, the *Bragg* Court found that

[t]he language of West Virginia Code § 17C-5-6 is clear and unambiguous that a law enforcement officer's duty to make available information about the test performed at the request of the officer (including blood test results) does not exist absent a request for such information by the person who is tested.

*Bragg*, 244 W. Va. at ___, 851 S.E.2d at 494.

In the instant case, the sample of respondent's blood was collected for testing at the request of the investigating officer. Accordingly, we find that West Virginia Code § 17C-5-6, as opposed to West Virginia Code § 17C-5-9, applies. Further, as West Virginia Code § 17C-5-6 applies to the facts of the underlying case, we find that the OAH and the circuit court's reliance on West Virginia Code § 17C-5-9 and the case law construing it (i.e., *Hall* and *Divita*) was misplaced and clearly wrong.[3]

Having determined that the circuit court erred in affirming the OAH's order reversing the revocation of respondent's license based on the fact that respondent's blood sample was not tested, we remand this case for a determination of whether there was sufficient proof under the preponderance of the evidence standard to warrant the administrative revocation of respondent's driver's license.

For the foregoing reasons, the circuit court's September 9, 2020, order is hereby reversed, and the case is remanded for determination of whether there was sufficient proof to warrant the administrative revocation of respondent's license. To facilitate the commencement and conclusion

---

[3] As this Court noted in *Bragg*, the *Hall* and *Divita* cases both "involved drivers who were arrested for DUI and . . . demanded that a sample of blood be taken pursuant to West Virginia Code § 17C-5-9 (2013)." *Bragg,* 244 W. Va. at __ n.2, 851 S.E.2d at 490 n.2. In both *Hall* and *Divita*, this Court upheld the reversal of the drivers' license revocation orders because their blood samples were taken but not tested. However, in the instant case, unlike *Hall* and *Divita*, respondent did not demand a blood test be taken, but rather agreed to submit to a blood test requested by the investigating officer. Accordingly, respondent's case must be decided under West Virginia Code § 17C-5-6 and not West Virginia Code § 17C-5-9.

4

of the remand proceedings, we direct the Clerk of this Court to issue the mandate of this Court contemporaneously with the issuance of this decision.

Reversed and remanded with directions.

**ISSUED:** June 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**DISSENTING:**

Wooton, Justice, dissenting:

I respectfully dissent, as I believe that *Frazier v. Bragg*, 244 W. Va. 40, 851 S.E.2d 486 (2020), the precedent upon which the majority relies, was wrongly decided.[4] Further, the sudden spate of cases involving the same fact pattern as existed in *Bragg* – close to a dozen of them in quick succession, and still counting – leads me to conclude that the failure to process blood samples in cases involving a charge of driving under the influence may be a systemic problem that needs to be addressed.

It is facile for this Court to say that due process comes into play only where an individual charged with DUI has requested a blood test separate and apart from the test requested by the arresting officer. First, we cannot reasonably expect that lay persons are familiar with the provisions of West Virginia Code § 17C-5-9, which bestows this right, and it is frequently impossible for an arrestee to secure legal advice during the narrow time frame within which a blood draw must be taken if it is to have any evidentiary value. Additionally, if an individual has acquiesced to the arresting officer's request for a blood draw - an invasive and sometimes painful procedure – should he or she not reasonably assume that the blood will be tested and the results made known to the defense?[5] Finally, blood tests are expensive, which makes the option of an

---

[4] In *Bragg*, where "the blood sample [Mr. Bragg] agreed to give at the request of the investigating officers was never tested and, as was disclosed at the administrative hearing, forever lost[,]" the Court held that because the blood was drawn upon the request of the arresting officer, not upon the demand of the driver, "[t]he absence of blood evidence . . . was simply not at issue in this case." *Id*. at __, 851 S.E.2d at 494.

[5] *Cf. In re Burks*, 206 W. Va. 429, 525 S.E.2d 310 (1999), wherein it was held that "[t]he requirement that a driver arrested for DUI must be given a blood test on request does not include a requirement that the arresting officer obtain and furnish the results of that requested blood test." *Id*. at 430, 525 S.E.2d at 31, Syl. Pt. 3. Surely in a situation where the blood draw is taken at the

independent blood test one which is available only to individuals of means.

I also disagree with the majority's conclusion that a remand for determining whether the other evidence is "sufficient proof under the preponderance of the evidence standard to warrant the administrative revocation of [a] driver's license[,]" is a remedy for the loss or destruction of a blood sample that was requested by the arresting officer. Blood test results are scientific evidence which can cast significant doubt upon the arresting officer's wholly subjective observations such as "glassy eyes" or "halting gait." *See, e.g.*, *State v. York*, 175 W. Va. 740, 741, 338 S.E.2d 219, 221 (1985) (noting the importance of a blood test "to a court's truth-finding function.") (citations omitted). This is especially true where, as is frequently the case, those observations come into evidence through introduction of a hearsay document, the DUI Information Sheet, rather than through the testimony of an arresting officer who is subject to cross examination.[6] By allowing license revocation to rest solely upon subjective and circumstantial evidence, after the scientific evidence has been lost, thrown away, or otherwise ignored *by State actors*, this Court has stripped all remaining vestiges of due process from the administrative revocation proceedings.

For these reasons, I respectfully dissent.

---

request of the arresting officer, the arrestee has a reasonable expectation that the officer will follow through by having the blood tested, at a minimum.

[6] *See Crouch v. W. Va. Div. of Motor Vehicles*, 219 W. Va. 70, 631 S.E.2d 628 (2006) (upholding the admissibility of this evidence against statutory and constitutional challenge) and *Frazier v. Fouch*, 244 W. Va. 347, 853 S.E.2d 587 (2020) (holding that the Division of Motor Vehicles has no duty to secure an officer's presence at the hearing).