338 S.E.2d 219

**STATE of West Virginia**

v.

**Victor YORK.**

**No. 16214.**

Supreme Court of Appeals of West Virginia.

Dec. 17, 1985.

Cecil C. Varney, Williamson, for appellant.

Dana D. Davis, Asst. Atty. Gen., Charleston, for appellee.

NEELY, Justice.

At 10:30 o'clock a.m. on 25 December 1982, while driving down U.S. Route 52,

Deputy Conner Lawson observed a car weaving left of the center line and back for approximately 200 yards. Accordingly, Deputy Lawson pulled the car over. Behind the wheel of the car Deputy Lawson found defendant Victor York. Both the car and Mr. York reeked of liquor. After a series of field sobriety tests, Deputy Lawson took Mr. York to the Mingo County Sheriff's Department where Deputy Ricky Starr conducted a breathalyzer test of Mr. York's breath. At the conclusion of the breathalyzer test, the machine recorded Mr. York's blood alcohol content to be .16, which is .06 above the point at which one is legally presumed to be intoxicated. Mr. York alleges he asked for a blood test and that the deputies refused his request. Deputy Lawson and Deputy Starr both deny that such a request was made. The jury returned a verdict of guilty, and appellant was sentenced to serve ninety (90) days in the county jail.

## I

█ Mr. York is correct in arguing that *W.Va.Code* 17C–5–9 [1983][1] allows any person arrested for driving a motor vehicle while intoxicated to demand that a sample of his blood be taken within two hours of the time of his arrest. *W.Va.Code* 17C–5–6 [1981] outlines how law enforcement officials shall administer this test and the right of the person tested to have an additional test at his own expense.[2] But from a driver's right to ask for a blood test in addition

to the breathalyzer test, we cannot infer a duty on the part of law-enforcement officers to administer a blood test in every case in which they arrest someone for driving while intoxicated. *W.Va.Code* 17C–5–9 [1983] clearly does not *require* blood tests. Under the *Code* law enforcement officers are under no duty to inform the defendant of his right to additional tests. Rather, *W.Va.Code* 17C–5–9 [1983] accords an individual arrested for driving under the influence of alcohol, controlled substances, or drugs a right to demand and receive a blood test within two hours of his arrest. Furthermore, this statutory right is hardly a new development. Historically, one charged with intoxication has enjoyed a constitutional right to summon a physician at his own expense to conduct a test for alcohol in his system. To deny this right would be to deny due process of law because such a denial would bar the accused from obtaining evidence necessary to his defense. *Application of Newbern*, 175 Cal.App.2d 862, 1 Cal.Rptr. 80 (1959); *Brown v. Municipal Court for Los Angeles Judicial Dist.*, 86 Cal.App.3d 357, 150 Cal.Rptr. 216 (1978). *See also* Annot., 78 A.L.R.2d 901 (1961). The defendant's right to request and receive a blood test is an important procedural right that goes directly to a court's truth-finding function.

█ In the case at hand, the dispositive question is whether Mr. York, in fact, requested a blood test. At trial Mr. York

---

**1.** *W.Va.Code* 17C–5–9 [1983] states:

"Any person lawfully arrested for driving a motor vehicle in this State while under the influence of alcohol, controlled substances or drugs *shall have the right to demand that a sample or specimen of his blood,* breath or urine be taken within two hours from and after the time of arrest, and that a chemical test thereof be made. The analysis disclosed by such chemical test shall be made available to such arrested person forthwith upon demand." [Emphasis supplied by the Court].

**2.** *W.Va.Code* 17C–5–6 [1981] states in pertinent part:

"Only a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his employment, acting at the request and direction of the law-enforcement officer, may withdraw blood for the purpose of

determining the alcoholic content thereof. These limitations shall not apply to the taking of a breath test or a urine specimen. In withdrawing blood for the purpose of determining the alcoholic content thereof, only a previously unused and sterile needle and sterile vessel may be utilized and the withdrawal shall otherwise be in strict accord with accepted medical practices. A nonalcoholic antiseptic shall be used for cleansing the skin prior to a venapuncture. The person tested may, at his own expense, have a doctor of medicine or osteopathy, or registered nurse, of trained medical technician at the place of his employment, of his own choosing, administer a chemical test in addition to the test administered at the direction of the law-enforcement officer. Upon the request of the person who is tested, full information concerning the test taken at the direction of the law-enforcement officer shall be made available to him...."

testified that he did make such a request. Deputies Starr and Lawson testified that Mr. York made no such request. During a hearing in chambers, the lower court found the evidence the state presented to be competent and believable, and accordingly made a factual determination that Mr. York did not demand a blood test. And as *State v. Clark*, 171 W.Va. 74, 297 S.E.2d 849, 854 (1982) requires, the trial court indicated on the record the basis of its ruling. We find that the evidence supported the judge's finding.

## II

 Mr. York also raises the novel issue of whether law enforcement officials must preserve the ampoule used in a breathalyzer test for counsel for the defense if the prosecution intends to use breathalyzer results at trial. We choose to follow the United States Supreme Court's decision in *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). The Court, after extended discussion, determined that the Due Process Clause of the Fourteenth Amendment does not require that law-enforcement officers or agencies preserve breath samples to introduce the results of a breath analysis at trial. There is also a growing body state law that supports this proposition.[3] Furthermore, there is nothing in the West Virginia *Code* or in our common law that would require the test ampoule's preservation. *State of West Virginia v. Sandler*, 175 W.Va. 572, 336 S.E.2d 535, 537 (1985) (Brotherton, J.). Because there is no authority that requires law enforcement officials to preserve either the breath samples or the test ampoules

used in breathalyzer tests, we will not create such authority here. Mr. York's assignment of error must fail.[4]

For the foregoing reasons, the decision of the Circuit Court of Mingo County is affirmed.

Affirmed.

---

3. *See Turpin v. State*, 606 S.W.2d 907 (Tex.Crim. App.1980); *State v. Canaday*, 90 Wash.2d 808, 585 P.2d 1185 (1978); *State v. Newton*, 274 S.C. 287, 262 S.E.2d 906 (1980); *State v. Teare*, 135 N.J.Super 19, 342 A.2d 556 (1975); *City of Las Vegas v. O'Donnell*, Nev., 686 P.2d 228 (1984); *State v. Shutt*, 116 N.H. 495, 363 A.2d 406 (1976); *People v. LePree*, 105 Misc.2d 1066, 430 N.Y.S.2d 778 (1980). *See also* Annot. 19 A.L.R. 4th 509 § 6 (1983) and note that *State v. Booth*, 98 Wis.2d 20, 295 N.W.2d 194, 19 A.L.R. 4th 498 (Ct.App.1980), which was the subject of the annotation and which stood for the proposition that the destruction of an ampoule used in an alcohol breath test warranted the suppression of

the test result, has been overruled by *State v. Walstad*, 119 Wis.2d 483, 351 N.W.2d 469 (1984).

4. We have also considered Mr. York's other two assignments of error that: "The court erred in overruling defendant's objection to the admission of state exhibit no. 3, which amounts to a confession"; and "The court erred in failing to direct a verdict or in the alternative, exclude the breathalyzer evidence when it became apparent from the testimony that the officer failed to properly administer the test" and find them without merit.