FILED
June 15, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0134 – *Frazier v. Talbert*

WOOTON, J., dissenting:

The new point of law stated in the majority opinion is a dangerous exercise in futility. Despite recognizing that the administrative license revocation procedure has now been abrogated by statute effective July 1, 2021, the majority nonetheless issues a startling new point of law mere weeks before that deadline—a point of law that not only improperly creates judicial restraints on a legislatively prescribed due process right, but may invite misapplication in future criminal DUI proceedings. Accordingly, I respectfully dissent.

As acknowledged by the majority, the Office of Administrative Hearings and the civil administrative license revocation procedure upon arrest or conviction of DUI has been dismantled in its entirety. *See* W. Va. Code § 17C-5C-1a (2020) ("Termination of Office of Administrative Hearings"). Such license revocations are now part of the criminal penalty upon conviction for the various DUI and related offenses set forth in West Virginia Code §§ 17C-5-2 (2020) and 17C-5-7 (2020). The administrative procedure for the handling of DUI and related revocations set forth in West Virginia Code § 17C-5A-2 (2015) ceases to operate on July 1, 2021 and pending administrative DUI revocation cases are to be dismissed. *See* W. Va. Code § 17C-5A-2b(2) (2020) ("The provisions of § 17C-5A-2 of this code have no force or effect beginning on the date when the Office of Administrative Hearings terminates, pursuant to § 17C-5C-1a of this code."); W. Va. Code

1

§ 17C-5C-1a(c)(1) (2020) ("If any appeal of a revocation or suspension order, described in § 17C-5C-3(3) of this code, is pending before the office on or after July 1, 2021, the underlying revocation or suspension order shall be dismissed.").[1]

Nonetheless, in this the final hour of the DUI administrative license revocation era, the majority deigns to establish factors which limit the due process right described in West Virginia Code § 17C-5-9 (2013). This statute provides a critical due process right to drivers accused of DUI, permitting them to demand and receive a breath or blood test, thereby enabling them to preserve what may well be the only potentially exculpatory evidence available to them:

> Any person lawfully arrested for driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs *shall have the right to demand* that a sample or specimen of his or her blood or breath to determine the alcohol concentration of his or her blood be taken . . . and that a chemical test thereof be made.

*Id*. § 17C-5-9, in part (emphasis added). This statute contains no limitation on the scope of its application and is equally applicable to drivers who find themselves in the throes of

---

[1] Obviously, the time period between issuance of the majority opinion and mandate and the cessation of the Office of Administrative Hearings allows a brief window in which the new point of law may be applied not only in this case but in others similarly pending. However, because I disagree with the notion that this Court may impose conditions upon the statutory due process right articulated in West Virginia Code § 17C-5-9, I dissent because the new point of law is not merely futile, but legally unsound.

the soon-defunct administrative process or criminal proceedings; the statute itself is therefore unaffected by the recent statutory changes.

The majority creates a new point of law containing factors for "consideration" in determining the seriousness of and "consequences" for violation of this statute, thereby limiting its efficacy. Importantly, however, the majority's analysis is conducted under the auspices of the *civil* administrative proceeding, which requires a fundamentally different analysis than that which must ensue when applied in a criminal proceeding, which is all that will soon remain.[2] This creates the likelihood, if not certainty, that its ill-advised new factors for consideration upon denial of a driver-demanded blood test will be misapplied to criminal DUI proceedings without proper analysis of its import and application in the criminal context.

As I have articulated in prior dissents, this Court has incrementally engaged in a process designed to strip drivers of any "remaining vestiges of due process" in administrative license revocation proceedings. *See Frazier v. Goodson,* No. 20-0236, 2021 WL 1821454, at *4 (W. Va. May 6, 2021) (memorandum decision) (Wooton, J.,

---

[2] The majority implicitly acknowledges the inapplicability of its new point of law to criminal proceedings through repeated references to the fact that the precedent that it effectively overrules (dismissing DUI revocations where a driver-demanded test is denied) is premised on *criminal* caselaw. It fails, however, to caution against the use of this new point of law in anything other than those remaining administrative revocations that the Office of Administrative Hearings may manage to dispose of in the ensuing couple of weeks prior to July 1, 2021.

dissenting); *see also Frazier v. Miller*, No. 20-0745, 2021 WL 2023586 (W. Va. May 20, 2021) (memorandum decision) (Wooton, J., dissenting).  It is my position that these prior erroneous decisions—permitting DMV to succeed on mere documents without testimony of a live witness at the revocation hearing[3] and permitting the willful refusal to test officer-requested blood draws or provide the results of blood evidence testing[4]—do not survive the dismantling of the administrative process.  It is further my position that *any recurring issue must be examined anew in a purely criminal context*.  However, this latest nail in the coffin of due process, issued with full appreciation of the disassembly of the civil revocation procedure involved, sends an improper message that the majority's new syllabus point may have applicability after July 1, 2021.[5]  It is my position that it does not,

---

[3] *See Miller*, No. 20-0745, 2021 WL 2023586, at *3-4 (reiterating holding in *Frazier v. Fouch*, ___ W. Va. ___, 853 S.E.2d 587 (2020) that DMV records alone may be utilized to establish DUI without live testimony of arresting officer).

[4] *See Goodson*, No. 20-0236, 2021 WL 1821454, at *2-3 (reiterating holding in *Frazier v. Bragg*, 244 W. Va. 408, 851 S.E.2d 486 (2020) that blood test results need not be provided to driver absent request).

[5] The stark distinction between the two proceedings was explained by the *Jordan* Court:

> This result arises by virtue of the difference in issues and levels of proof required between the administrative and criminal proceeding. In the former, the key issues are the reasonable grounds to believe the licensee was driving while under the influence of intoxicating liquor and whether he refused the test. A preponderance of evidence is sufficient for proof of these issues at the administrative hearing. In the criminal trial, the key issue is whether he was driving while under the influence

(continued . . .)

4

nor should it be used as a springboard for similar handling of violations of West Virginia Code § 17C-5-9 in criminal proceedings, if and when that issues presents itself to the Court.

The practicability and utility of the majority's new syllabus point aside, the entire premise behind judicially created "factors" to gauge the seriousness of an outright denial of a statutory due process right is fundamentally flawed. For thirty-six years the law of this State has been clear that the blood test referenced in West Virginia Code § 17C-5-9 articulates a statutory due process right provided to a driver: "W. Va. Code 17C-5-9 [1983] accords an individual arrested for driving under the influence of alcohol, controlled substances, or drugs a right to *demand and receive* a blood test within two hours of arrest." Syl. Pt. 1, *State v. York*, 175 W. Va. 740, 338 S.E.2d 219 (1985) (emphasis added). As the *York* Court explained:

> To deny this right would be to deny due process of law because such a denial would bar the accused from obtaining evidence necessary to his defense. The defendant's right to request and receive a blood test is an important procedural right that goes directly to a court's truth-finding function.

*Id*. at 741, 338 S.E.2d at 221 (citations omitted); *see also State ex rel. King v. MacQueen*, 182 W. Va. 162, 165 n.7, 386 S.E.2d 819, 822 n.7 (1986) (finding *York* addressed "evidentiary implications" of failure to provide demanded blood test).

---

of intoxicating liquor. Because of the possibility of fines and imprisonment, proof beyond a reasonable doubt is required.

*Jordan v. Roberts,* 161 W. Va. 750, 757-58, 246 S.E.2d 259, 263 (1978).

5

The Court then recognized the necessary implications of the right to demand blood testing, holding that an arresting officer must not only heed a demand for such a test, but law enforcement must lend both its "assistance" and "direction" to ensure the test is secured:

> A person who is arrested for driving under the influence who requests and is entitled to a blood test, pursuant to W. Va. Code, 17C-5-9 [1983], must be given the opportunity, with the assistance and if necessary the direction of the arresting law enforcement entity, to have a blood test that insofar as possible meets the evidentiary standards of 17C-5-6 [1981].

Syl. Pt. 2, *In re Burks*, 206 W.Va. 429, 525 S.E.2d 310 (1999); *see also Reed v. Divita*, No. 14-11018, 2015 WL 5514209, at *3 (W. Va. Sept. 18, 2015) (memorandum decision) ("It is clear under these circumstances that due to the actions of the officer [ignoring demand for blood test], respondent was denied her statutory and due process rights under West Virginia Code § 17C-5-9.").  The majority now purports to legislate mitigating "factors" for consideration into the statute, to be utilized by lower courts when this due process right is denied in order to determine the significance of the denial and determine the remedy.

Without question, "[t]he purpose of due process is to prevent fundamental unfairness, and one of its essential elements is the opportunity to defend." *State v. Snipes*, 478 S.W.2d 299, 303 (Mo. 1972).  As pertains to the opportunity to defend, this Court long ago expressly held with respect to even *civil* license revocations that "[u]nder procedural due process concepts[,] . . . the State cannot preclude the right to litigate an issue central to a statutory violation or deprivation of a property interest." *Jordan*, 161 W. Va. 750, 246

6

S.E.2d 259, syl. pt. 2, in part. By preventing a driver from obtaining his statutory entitlement to a blood test, the driver has plainly been precluded the right to litigate his blood alcohol concentration. Granting the lower courts unbridled discretion to craft a "remedy" for the State's refusal to permit a driver to secure the most compelling, if not only, defensive evidence available to him or her effectively nullifies the due process right.[6] The majority attempts to assuage these concerns by reiterating that due process is ultimately a matter of fundamental fairness. It fails to explain, however, how a driver, unable to secure potentially exculpatory evidence because he or she is in police custody and willfully denied his or her right to secure that evidence—all in the face of a statute guaranteeing him or her that right—could ever be assured that his or her revocation was otherwise "fundamentally fair."

Additionally, any suggestion that the majority's new syllabus point is merely a reiteration of a well-accepted test for lost or missing evidence in criminal proceedings and is therefore most certainly appropriate in a civil context is not an apt correlation. The majority's new syllabus point mimics the "State's breach of its duty to preserve evidence" factors adopted in syllabus point two of *State v. Osakalumi*, 194 W. Va. 758, 461 S.E.2d 504 (1995). *Osakalumi* holds that where the State fails to preserve evidence, in

---

[6] Furthermore, the majority's reassurance that denial of a blood or breath test is of lesser consequence in a mere civil revocation proceeding is cold comfort to a West Virginia driver. In a rural state such as West Virginia, a driver's license is not a mere luxury; it is a virtual necessity for purposes of traveling to and from work, school, church, or otherwise securing the essentials of daily living.

7

determining the consequences, the court must consider "(1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence produced at the trial to sustain the conviction." *Id*., syl. pt. 2, in part. However, there are several obvious problems with adopting this test wholesale and applying it to DUI proceedings of any type.

First, and most importantly, *Osakalumi* did not examine what the proper consequences should be for a failure to preserve evidence where the defendant is afforded a statutory due process right to secure and preserve that evidence. Instead, *Osakalumi* is designed to deal generally with unpreserved evidence and is not specific to any particular type of evidence or offense. Its purpose is simply to strike a balance between "'constitutionally guaranteed access to evidence[]'" and "'an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.'" *Id*. at 763-64, 461 S.E.2d at 509-10 (quoting *Arizona v. Youngblood*, 488 U.S. 51, 55, 57-58 (1988)). *Osakalumi,* therefore, naturally did not consider the failure to preserve evidence which has been afforded special significance by the Legislature, much less a specific type of evidence which almost definitively proves or disproves a particular offense, like blood or breath testing in a DUI offense.

8

In fact, the *Osakalumi* Court implicitly warned against its misapplication, underscoring the United States Supreme Court's admonitions against turning a blind eye to unpreserved "'evidence that might be expected to play a significant role in the suspect's case[]'" or "'[was] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *Id*. at 763-64, 461 S.E.2d at 509-10 (quoting *California v. Trombetta*, 467 U.S. 479, 488-89 (1984)). *Osakalumi* further highlighted the Supreme Court's warning that where lost evidence was of such a character that it "'could eliminate the defendant as the perpetrator, such loss is material to the defense and is a denial of due process.'" *Id*. at 764 (quoting *Youngblood*, 488 U. S. at 54 (internal quotations omitted)). Blood or breath evidence in a DUI prosecution is of exactly such a character.

Finally, the *Osakalumi* factors themselves are presumptively failed where an officer denies a driver a statutorily demanded breath or blood test. Because of the existence of a statutory right to a breath or blood test, it is inconceivable that an officer's denial of such a demand would *not* constitute bad faith.[7] As the Supreme Court indicated, this "bad faith" element is based upon the premise that

> requiring a defendant to show bad faith on the part of the police
> . . . confines [the obligation to preserve evidence] to that class
> of cases where the interests of justice most clearly require it,
> i.e., *those cases in which the police themselves by their conduct*

---

[7] Even the attempt to avoid bad faith in the instant case—claiming "misapprehension of the law" by the arresting officer—is specious, as evidenced by the fact that the officer denied the driver even made such a request until confronted with video evidence to the contrary.

> *indicate that the evidence could form a basis for exonerating the defendant.*"

*Youngblood*, 488 U.S. at 58 (emphasis added). Obviously, blood or breath evidence may conceivably be the only evidence which could form a basis for exonerating a driver arrested for DUI. Accordingly, where an officer denies a West Virginia driver a demanded blood test despite the statutory right to one, by such denial the officer effectively concedes its exculpatory effect. For these same reasons, the second factor—the "importance" of the evidence—hardly warrants discussion. Evidence of blood alcohol level is dispositive and virtually inconvertible—whether inculpatory or exculpatory. Finally, the third factor requiring evaluation of the sufficiency of the remaining evidence—which is typically the subjective observations of the arresting officer [8]—only makes the failure to permit preservation of blood or breath evidence even more devastating to the driver's case, not less.

Given that DUI revocations now fall exclusively within the criminal realm, it is critical to observe what courts have said regarding the importance of independent testing to a criminal DUI defense:

> It can be no clearer that a defendant's Sixth Amendment right to present a full defense is implicated when he is deprived of his codified right to an independent chemical test. While the right to the test has been codified, the violation of the right is an unconstitutional deprivation of a defendant's right to a fair trial. Indeed, the intent behind § 625a(6)(d) further

---

[8] As evidenced by the case at bar, the driver offered logical explanations for the officer's subjective observations of his driving, gait, and field testing. As is often the case, the *only* non-subjective evidence is breath or blood testing.

> demonstrates that the Legislature never meant to afford one party scientific evidence while denying the other party an ability to independently obtain the same[.]

*People v. Anstey*, 719 N.W.2d 579, 604-05 (Mich. 2006) (Cavanagh, J. and Kelly, J., dissenting) (footnotes omitted); *Application of Newbern*, 1 Cal. Rptr. 80, 83 (Cal. Ct. App. 1959) (holding that denying defendant opportunity to obtain blood test "is to deny him the only opportunity he has to defend himself against the charge."). As members of one court stated:

> Neither ignoring the constitutional violation nor allowing for suppression of the results of the state's chemical test will rectify the violation or put a defendant on equal footing with that of his accuser. Rather, a police officer can unilaterally place a defendant in a position from which he can never recover—namely, completely without chemical evidence to use to defend against the prosecutor's chemical evidence. And an officer's good or bad faith has no bearing on the fact that the defendant is still deprived of the only exculpatory evidence that he might possibly obtain.

*Anstey*, 719 N.W.2d at 611 (Cavanagh, J. and Kelly, J., dissenting).

Other courts have similarly held that "constitutional standards of due process give a [DUI] suspect the right to obtain an independent blood test" and that nothing short of dismissal will cure that deprivation. *McNutt v. Super. Ct. of State of Ariz., In & For Maricopa Cnty.*, 648 P.2d 122, 124 (Ariz. 1982) (en banc). Finding that where a driver demanded a blood test but could not do so due to being in custody, the effect was "petitioner not being able to attempt to gather evidence exculpating him on the issue of intoxication" and "[d]ismissal of the case with prejudice is the appropriate remedy because the state's

11

action foreclosed a fair trial by preventing petitioner from collecting exculpatory evidence no longer available." *Id*. at 125.

The Montana Supreme Court concluded similarly, stating

[i]t is undisputed that a person accused of a criminal offense has a due process right to obtain existing exculpatory evidence. It also is undisputed that, when the charged offense is DUI, the accused has a right to obtain a test of the amount of alcohol in his or her blood independent of the test offered by the arresting officer[.]

*State v. Minkoff*, 42 P.3d 223, 224 (Mont. 2002) (citations omitted). The *Minkoff* court rejected any lesser remedy than dismissal, finding that

[s]uppressing the State's breath test and allowing a new trial would leave Minkoff unable to rebut the field sobriety test evidence through an independent blood test—the right to which he was effectively denied. We conclude suppression of the breath test results is insufficient to remedy the deprivation of that right[.]

*Id*. at 227. As the Georgia Court of Appeals aptly reasoned,

The law gives one accused of driving under the influence of alcoholic beverages the right to have a chemical analysis of his blood and urine by a qualified person of his own choosing. But of what value is that right if the accused is in custody of law enforcement officials who either refuse or fail to allow him to exercise the right? We hold that under such circumstances there is coupled with the right granted to the accused a corresponding duty on the part of law enforcement officers not to deny him that right.

*Puett v. State*, 248 S.E.2d 560, 561 (Ga. Ct. App. 1978); *accord State v. Livesay*, 941 S.W.2d 63, 66 (Tenn. Crim. App. 1996) ("We do not believe that simply suppressing the State's blood alcohol test is a sufficient safeguard of the Defendant's right to be able to

gather and preserve evidence in his defense. This evidence, if favorable to the Defendant, could easily have secured his acquittal."); *Anstey*, 719 N.W.2d at 612 (Cavanagh, J. and Kelly, J., dissenting) ("[D]epriving a driver of the mandatory right to an independent chemical test is a due process violation for which dismissal of the charges is the only remedy. To hold otherwise is to not only ignore the clearly mandatory nature of the statute, but to disregard the constitutional implications of its violation.").[9] The common underpinning to these cases is that, irrespective of the nature of the proceeding or penalty, the evidence itself is of no lesser value to the fairness of the proceedings against the driver.

The majority is careful to avoid effectively abrogating West Virginia Code § 17C-5-9 by claiming it is merely gap-filling the "consequences" for deprivation of the statutory right. However, denial of a driver's statutory right to a blood test is simply irremediable—whether in the soon-defunct civil, administrative revocation context or a criminal proceeding—and commands dismissal of the action against the driver. I again caution against application of the majority's new syllabus point in the context of criminal proceedings, a scenario which necessarily warrants a fundamentally different analysis that this Court has not yet undertaken. More importantly, I dissent to the majority's attempt to

---

[9] *Compare Snyder v. State*, 930 P.2d 1274 (Alaska 1996) (finding appropriate remedy for failure to permit independent blood test is presumption that blood test would have been favorable to driver); *Commonwealth v. Hampe*, 646 N.E.2d 387, 392 (Mass. 1995) (finding "suppression of the breathalyzer results and of police testimony regarding events, observations and opinions after the violation of the statutory right, in combination with an appropriate instruction regarding the existence of the statutory right and the violation thereof by the police, will be adequate in most cases, where dismissal is not required, to cure potential or actual prejudice to the defendant.").

constrain the due process right afforded by West Virginia Code § 17C-5-9 by leaving the "consequences" to the whims of the courts.  A due process right is only as valuable as the remedy it affords.

For these reasons, I respectfully dissent.